IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NOVAGOLD RESOURCES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 1:25MC00850 RP |
| | § | |
| J CAPITAL RESEARCH USA LLC, | § | [EDNY No. 1:20-cv-02875-LDH-PK] |
| | § | |
| Defendant. | § | |

### ANONYMOUS THIRD PARTY'S
### MOTION TO QUASH NONPARTY SUBPOENAS

Nonparty Movant Anonymous Third Party ("Movant"), located in this District and Division, hereby moves pursuant to Fed. R. Civ. P. 45(d)(3) to quash four nonparty subpoenas (the "Subpoenas") served on Movant in the above-captioned lawsuit.

**I.      Introduction and summary.**

The Subpoenas arise out of a libel suit pending in the Eastern District of New York (the "Underlying Action"). Plaintiff Novagold Resources, Inc. ("Novagold") alleges in the Underlying Action that Defendant J Capital Research USA LLC ("JCAP") defamed it by publishing a May 2020 research report that describes alleged misleading projections made by Novagold concerning the viability of Novagold's proposed Donlin mine project (the "Report").

Nonparty Movant is a firm that obtains research from activist-journalists like JCAP, and places "short" positions in companies based on that reporting. Ex. 1 ¶ 2. Pursuant to a confidential agreement, JCAP provided Movant with prepublication access to the Report in exchange for a percentage of any net profits that Movant generated from its short position on Novagold. *Id.* ¶ 5.

Movant is proceeding anonymously here because there is a pending appeal in the Second Circuit that will decide whether the First Amendment associational privilege protects Movant's

identity and communications with JCAP from disclosure in the Underlying Action.[1] Significantly, the court in the Underlying Action has already found that the Report is "news" entitled to First Amendment protection and that Movant's communications with JCAP are protected by New York's shield law, N.Y. Civil Rights Law 79-h (the "reporter's privilege"). The district court is also currently considering whether the reporter's privilege extends to protect Movant's identity from disclosure.

Because these pending proceedings in New York District Court and the Second Circuit may preclude or significantly impact the discoverability of Movant's identity and communications with JCAP – the subjects of the pending Subpoenas – Movant respectfully requests that this Court quash the Subpoenas, or at least hold this motion in abeyance while the determinative legal issues are decided. If the Subpoenas are enforced before those issues are decided, it will effectively moot legal issues currently pending in the Underlying Action and nullify Movant's rights and the reporter's privilege governing the Report. Moreover, there is no practical way to produce the documents and deposition testimony sought by the Subpoenas while also protecting Movant's identity from broader disclosure. Indeed, Novagold has already taken the position that it is not bound by the standing confidentiality order in the Underlying Action with respect to materials it deems to be "judicial documents." Ex. 1 ¶¶ 12-17. Without protection from this Court, there is a

---

[1] "The Supreme Court [has] explained that the First Amendment associational privilege applies when a discovery order 'entail[s] the likelihood of a substantial restraint upon the . . . right to freedom of association.'" *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007 (E.D. Tex. Jan. 11, 2022) (citing *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Here, Movant has argued that its association with JCAP for the purpose of speaking out against misrepresentations by a publicly-held company is protected First Amendment activity. The Court in the Underlying Action has already ruled that the Report is protected as "news," thus laying the foundation for the associational privilege. Movant also has presented clear evidence that it is likely to face harassment and reprisals if its identity is disclosed. *See* Ex. 2. Since Novagold's purported need for the requested discovery cannot withstand exacting scrutiny (the governing legal standard), it cannot overcome Movant's First Amendment rights.

substantial risk that Movant's identity will be publicly disclosed, privileged communications exposed, and that Movant will be irreparably harmed. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The Subpoenas should also be quashed because the information they seek (Movant's communications, trading positions, agreements with JCAP, and payments to JCAP) is either privileged, not relevant to any claim or defense in the Underlying Action, or has been produced.

## II. Procedural History.

### A. The report and Novagold's response.

Days after the Report was published by JCAP in May 2020, Novadgold's chairman vowed to seek "redress," stating ominously that "[w]e will do whatever it takes. More prosaically, to those who aided and abetted this pathetic exercise—we know some of who you are, and the rest we will learn who you are." Ex. 2 ¶ 9. Novagold filed the Underlying Action against JCAP on June 29, 2020, and filed its operative, Amended Complaint on November 16, 2020. Dkt. 34.[2]

### B. Applicability of New York's reporter's privilege.

The court in the Underlying Action has repeatedly held that the Report is "news" as defined by New York's shield law (the "reporter's privilege"). *See* 8/11/21 Minute Order (citing N.Y. Civil Rights Law § 79-h); 1/19/22 Minute Order (same). The court has also held that communications between Movant and JCAP are protected from disclosure under that statute. *Id.* On March 29, 2024, Magistrate Judge Peggy Kuo held that the reporter's privilege does not protect against disclosure of Movant's *identity*. Dkt. 157. That decision is currently on appeal to District Court Judge Lashann DeArcy Hall, Dkt. 165, and the parties await her ruling.

---

[2] "Dkt." refers to Underlying Action docket entries. The docket sheet is attached as Exhibit 3.

Motion to Quash – Page 3

### C.     Movant asserts its First Amendment right to freedom of association.

On July 1, 2024, Movant moved to intervene in the Underlying Action to seek a protective order shielding its identity from disclosure pursuant to the First Amendment associational privilege. Dkt. 175. In its motion, Movant described the long history of harassment and reprisals directed at short sellers (including threatened and actual violence by companies they criticize). Ex. 2. On October 4, 2024, Magistrate Judge Kuo issued a Report and Recommendation recommending that the motion be denied. Dkt. 191. The District Court adopted the Report and Recommendation. *See Novagold Res., Inc. v. J Cap. Rsch. USA LLC*, No. 20-CV-2875 (LDH) (PK), 2025 WL 957682, at *4 (E.D.N.Y. Mar. 31, 2025). Movant has appealed that decision to the Second Circuit, Dkt. 205, and has asked Judge DeArcy Hall to stay enforcement of her order pending appeal. Dkt. 209.

### D.     Magistrate Judge Kuo's temporarily granted Protective Order.

After Movant moved to intervene on May 27, 2024, Novagold accessed hidden metadata that was inadvertently embedded in the signature line of Movant's anonymous declaration (the "Doe Declaration"), learning Movant's identity. *See* Ex. 5. Rather than immediately notifying Movant's counsel that it had accessed this information, Novagold included the inadvertently produced information in its opposition brief (which it served three weeks later, but did not file, pursuant to the Court's bundling rule). *Id.* Movant immediately sought a protective order to prohibit Novagold from using or disclosing Movant's identity, and that motion was temporarily granted by Magistrate Judge Kuo on June 24, 2024, "pending a decision on the forthcoming motion to intervene." 6/24/24 Minute Order.

On April 16, 2025, Magistrate Judge Kuo prohibited Novagold from publicly disclosing Movant's identity, but at the same time—*without ruling on the propriety of any particular discovery request*—she permitted Novagold to serve Rule 45 subpoenas on Movant. 4/16/24

Minute Order. *Id.* She further held that if any discovery is produced by Movant in response to Novagold's subpoenas, Movant may not redact or otherwise withhold its identity during the discovery process.[3] *Id.* As noted, Magistrate Judge Kuo's rulings that underlay these decisions – that Movant has no First Amendment associational rights and that its identity is not shielded by the New York reporter's privilege – are being challenged on appeal.

### E.     The subpoenas.

Movant's counsel accepted service of the Subpoenas from Novagold, which indicate this District as the place of compliance. *See* Exs. 6-9. The Subpoenas seek documents and deposition testimony from both Movant (by way of a corporate witness), and the Doe officer who signed the Doe Declaration. *Id.* For the Court's convenience, a summary of the four topics covered by the Subpoenas is attached as Exhibit 10.

### III.   Legal standard.

Rule 45 provides that, "[o]n timely motion, the court for the district where compliance is required ***must*** quash or modify a subpoena that ... requires disclosure of ***privileged*** or other matter ... or subjects a person to ***undue burden***." Fed. R. Civ. P. 45(c)(3)(A)(iii) (emphasis added). In evaluating claims of undue burden, courts in this Circuit consider these factors:

> (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004). A Rule 45 subpoena is unduly burdensome if "the discovery sought is unreasonably ***cumulative or duplicative*** ... ."

---

[3] Magistrate Judge Kuo also found that Movant "is not likely to succeed in its appeal" regarding applicability of the associational privilege. Movant respectfully disagrees with that assessment.

Motion to Quash – Page 5

*Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444 (N.D. Tex. 2015) (emphasis added) (citing Fed. R. Civ. P. 26(b)(2)(c)).

IV. **The subpoenas should be quashed or held in abeyance pending resolution of the outstanding privilege issues.**

This Court should either quash the Subpoenas outright or hold them in abeyance while the Second Circuit and the district court in the Underlying Action resolve the determinative First Amendment and reporter's privilege issues at stake. To compel Movant's compliance with the Subpoenas now would moot those pending appeals, and disclosure of Movant's identity would cause irreparable harm. *See Elrod*, 427 U.S. at 373 (1976) ("The loss of First Amendment freedoms ... unquestionably constitutes irreparable injury.").

***First***, Movant's position is not frivolous or asserted to delay; Movant is likely to prevail on its appeal to the Second Circuit. It was clear error for the district court in the Underlying Action to find that the associational privilege does not apply solely because the relationship between Movant and JCAP was "commercial." *See Novagold*, 2025 WL 957682, at *4. Protection for the freedom of association depends not on the character of the actors, but on the nature of the activities at issue, and specifically whether those activities serve some public interest. *See, e.g., PA Advisors, LLC v. Google, Inc.*, No. 2:07-CV-480 DF, 2009 WL 10741631, at *3 (E.D. Tex. Oct. 8, 2009) (relying on the associational privilege to grant in part Google's motion to quash subpoena concerning the company's lobbying activities with respect to patents); *Perkins Coie LLP v. U.S. Dep't of Justice*, No. 25-716 (BAH), 2025 WL 1276857, at *38 (D. D.C. May 2, 2025) (finding that a law firm's commercial relationship with its clients implicates the freedom of association, and holding that an executive order compelling disclosure of those affiliations is unconstitutional). Indeed, the Supreme Court has made clear that it "is ***immaterial*** whether the beliefs sought to be advanced by association pertain to political, ***economic***, religious or cultural matters." *NAACP v.*

*Alabama*, 357 U.S. 449, 460 (1958) (emphasis added). The district court in the Underlying Action ignored that both the Report, and Movant's communications with JCAP have *repeatedly* been held to be subject to the First Amendment protections afforded by New York's reporter's privilege. It also failed to consider Movant's argument that there is a First Amendment interest implicated by association for the purpose of exposing alleged misrepresentations by publicly-held companies. It also ignored the substantial evidentiary record showing decades of harassment and reprisals against short sellers, as well as the chilling effect that disclosure would have here. Ex. 2 ¶¶ 8-21. And the district court did not even *consider* whether Novagold's purported need to reveal Movant's identity could withstand "exacting scrutiny," the applicable standard of review. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021); *accord McDonald v. Longley*, 4 F. 4th 229, 246 (5th Cir. 2021). Since Movant is likely to succeed on its appeal, Movant has also asked the district court to stay enforcement of its order pending appeal. *See* Dkt. 209.

**Second**, this Court should similarly defer to the appeals process in the Underlying Action concerning whether Movant's identity is protected from disclosure under the New York reporter's privilege. *See above* at #.

**Third**, no protective order could suffice to protect Movant's identity from broader disclosure if it were produced in this case. Novagold has made its retributive aims clear and vowed "redress" against those it considers to be involved with the Report. Ex. 2 ¶ 9. Novagold has also demonstrated a lack of care with respect to the provisions of the standing confidentiality order. *See* Ex. 1 ¶¶ 12-17 (describing Novagold's decision to file JCAP's expired written agreement with Movant on the public docket although it was designated confidential.). Moreover, once documents are produced, it is impractical to prevent them being used as "judicial documents," which are subject to a presumption of public access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110,

125-26 (2d Cir. 2006) (finding a right of public access, even to documents produced in reliance on a confidentiality order). Indeed, Novagold has even taken the remarkable position that it can unilaterally declare certain material to be "judicial documents" that fall outside the scope of the standing confidentiality order. Ex. 1 ¶¶ 12-17.

For all of these reasons, this Court should simply let the appeals process play out with respect to the pending First Amendment privilege questions. Any prejudice to Novagold in allowing this delay is significantly outweighed by the irreparable harm that Movant would suffer if its First Amendment rights were infringed.

## V.     Each subpoena topic violates Rules 26 and 45.

Even if this Court does not agree to defer to the appeals process in New York, the Subpoenas should be quashed for the independent reason that each of the discovery topics clearly exceed the limitations on nonparty discovery imposed by Fed. Rs. Civ. P. 26 and 45.

### A.     Topic No. 1 is overbroad and seeks privileged communications.

Topic No. 1 seeks *six years* of communications between Movant and JCAP during the period May 30, 2019 (*i.e.* a year before the May 2020 publication of the Report), to the present (*i.e.*, five years after the Report's publication). This topic is plainly overbroad, and the post-publication communications are not relevant to any claim or defense in the Underlying Action.

Moreover, JCAP's communications with Movant have repeatedly been held by the court in the Underlying Action to be protected by New York's reporter's privilege. *See supra* at #. In an apparent attempt to circumvent this obstacle, Novagold accessed metadata embedded in the signature line of Movant's declaration to uncover Movant's identity, *see* Ex. #, and then used that inadvertently disclosed information to serve Rule 45 subpoenas on Movant (with leave of the presiding Magistrate Judge in the Underlying Action), 4/16/25 Minute Order. To be clear, Movant does not seek to re-litigate whether Novagold should have been permitted to serve Rule 45

Motion to Quash – Page 8

Subpoenas. Movant acknowledges that the Subpoenas have been properly served and that it is subject to this Court's jurisdiction. Rather, Movant argues that by seeking communications in Texas that were held to be privileged in New York, Novagold appears to be capitalizing on its apparent ethical breach in order to circumvent the privilege holding of the New York court. *See, e.g., United States v. Cabelka*, No. 7:16-CV-00126-O-BP, 2017 WL 11814622, at *2 (N.D. Tex. Oct. 5, 2017) ("Rule 45 subpoenas are not meant to circumvent the regular discovery process under Rules 34 and 26.").

*Second*, communications between Movant and JCAP that took place subsequent to the commencement of the Underlying Action are protected by the attorney-client privilege, work product doctrine, and the common interest doctrine.[4]

B. **Topic No. 2 is not relevant to any claim or defense.**

Topic No. 2 seeks Movant's trading positions with respect to Novagold. Novagold has previously suggested that Movant's financial information bears on the question of whether *JCAP* published the Report with actual malice (the applicable fault standard that Novagold must satisfy to prove its defamation claim). *See* Dkt. 197 at 16. But Movant's trading positions have no conceivable connection to the question of whether JCAP subjectively believed the Report to be false. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n.6 (1974) (actual malice turns on a journalist's "subjective awareness of probable falsity."). Since Novagold has already provided sworn statements that it has never known Movant's Novagold trading position (or whether it had

---

[4] The Common Interest Doctrine "extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and [is] intended to facilitate representation between potential co-defendants with a common legal interest and their counsel." *Autobytel, Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569, 576 (E.D. Tex. 2006) (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710-11 (5th Cir. 2001)). Given Novagold's vow to seek "redress" against all parties involved with the Report, there can be no dispute that JCAP and Movant share a common legal interest.

any position at all), Ex. 1 ¶¶ 10-11, there cannot be any connection between Novagold's trading position and JCAP's state of mind at the time of publication.[5] Topic No. 2 simply has no relevance to any claim or defense in the Underlying Action.

    **C.    Topic Nos. 3 (agreements) and 4 (payments) are cumulative, duplicative, and unduly burdensome.**

The requests for documents and testimony concerning Movants agreements with JCAP (Topic No. 3) and Movants payments to JCAP (Topic No. 4) are "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Federal courts in this Circuit routinely protect nonparty witnesses from similarly burdensome discovery.[6] JCAP has already produced all relevant information concerning its agreements with Movant. JCAP testified that at the time the Report was published, there was no *written agreement* between JCAP and Movant. Ex. 1 ¶ 6. JCAP further testified that it had an oral agreement with Movant with respect to the Report, and testified as to all of that agreement's terms, including the percentage of any net profits from Novagold stock that Movant agreed to pay JCAP, and the total amount of money that Movant paid JCAP. *Id.* ¶¶ 6-8. JCAP also produced documents reflecting the date and amount of each payment made by Movant to JCAP under the agreement. *Id.* ¶ 9. JCAP even produced its prior, written

---

[5] Even if JCAP *did* know that Movant had a short position on Novagold's stock, that would not support an inference of actual malice. *See, e.g., Cassava Sciences, Inc. v. Bredt*, 2024 WL 1347362, at *25 (S.D.N.Y. Mar. 28, 2024) (finding that a defendant's short position could support an "inference of Defendant's genuine conviction that Plaintiff's stock was overvalued [.]").

[6] *See In re Matter of Subpoenas Served on Non-party Series 7 of Paramount Dev. Fin. Partners 3.0 LLC*, No. 1-23-MC-00319-DII, 2023 WL 3831794 (W.D. Tex. June 5, 2023) (quashing subpoenas that are unreasonably cumulative or duplicative); *Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*, No. 5:24-CV-038-H-BV, 2024 WL 5424424 (N.D. Tex. Nov. 19, 2024) (denying motion to compel the production of duplicate discovery); *Bentley v. LCM Corp.*, No. CIV.A. 08-1017, 2009 WL 2600093 (W.D. La. Aug. 21, 2009) (granting motion to quash Rule 45 subpoena where the discovery sought was "already produced by defendants"). *See also Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) (The more "cumulative," obviously, the less is the "need" for and "relevance" of cumulative document discovery.).

agreement with JCAP, which expired in 2018. *Id.* ¶ 8. JCAP further testified that it and Movant had agreed to proceed on an informal basis following the 2018 expiration of the written agreement. *Id.* ¶ 6. Accordingly, Topics 3 and 4 are unduly duplicative and cumulative.

### VI. Conclusion and prayers.

For the foregoing reasons, the Court should either quash the Subpoenas outright or hold this motion in abeyance pending resolution of the First Amendment privilege issues.

Respectfully submitted,

By: /s/ *[signature]*
Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
James A. Hemphill
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5764
(512) 480-9908 (Fax)

Robert D. Balin (*pro hac vice forthcoming*)
Adam I. Rich (*pro hac vice forthcoming*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8230
(212) 489-8340 (Fax)

***Attorneys for Movant Anonymous Third Party***

## Certificate of Service

I certify that on June 2, 2025, a true and correct copy of the foregoing document was served via email as shown below:

Brendan Francis Quigley
Baker Botts L.L.P.
30 Rockefeller Plaza
New York, NY 10112
brendan.quigley@bakerbotts.com

Eric R. DuPont
Baker Botts L.L.P.
30 Rockefeller Plaza
New York, NY 10112
eric.dupont@bakerbotts.com

Seth T. Taube
Baker Botts, LLP
30 Rockefeller Plaza
44th Floor
New York, NY 10112
seth.taube@bakerbotts.com

*Counsel for Respondent Novagold Resources Inc.*

David Seth Korzenik
Miller Korzenik Sommers Rayman LLP
The Paramount Building
1501 Broadway
Suite 2015
New York, NY 10036
dkorzenik@mkslex.com

Gillian Vernick
Miller Korzenik Sommers Rayman LP
1501 Broadway
Suite 2015
New York, NY 10036
gvernick@mkslex.com

*Counsel for Defendant J Capital Research USA LLC*

/s/ 
Peter D. Kennedy

## EXHIBITS IN SUPPORT OF
## MOVANT'S MOTION TO QUASH

1. Declaration of Adam I. Rich In Support of the Motion to Quash.

2. Declaration of Doe 2 (May 24, 2024).

3. Excerpted Docket in the Underlying Action.

4. Email exchange between Novagold's counsel and Movant's counsel regarding applicability of the standing Confidentiality Order in the Underlying Action.

5. Joint Letter Regarding Inadvertent Disclosure of Metadata.

6. Subpoena to Produce Documents, Directed to John Doe-1.

7. Subpoena to Produce Documents, Directed to John Doe-2.

8. Subpoena To Testify At Deposition In a Civil Action, Directed to John Doe-1.

9. Subpoena To Testify At Deposition In a Civil Action, Directed to John Doe-2.

10. Summary of Discovery Topics Sought in the Subpoenas.