IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NOVAGOLD RESOURCES, INC., <br><br>        Plaintiff, <br><br> v. <br><br> J CAPITAL RESEARCH USA LLC, <br><br>        Defendant. | Index No: 2:25-MC-00850-RP <br><br> [EDNY No. 1:20-cv-02875-LDH-PK] |

**DEFENDANT J CAPITAL RESEARCH USA LLC'S**
<u>**MOTION TO QUASH NON-PARTY SUBPOENAS**</u>

Defendant J Capital Research USA LLC ("JCap") respectfully submits this Motion to Quash Non-Party Subpoenas served on Nonparty Movant Anonymous ("Movant") by Plaintiff Novagold Resources Inc. ("Novagold") on April 17, 2025 (the "Subpoenas"). The facts are set forth in the accompanying Declaration of David S. Korzenik, dated June 5, 2025, attached as Exhibit A. JCap also joins the Movant in its Motion to Quash the Subpoenas.

## PRELIMINARY STATEMENT

Novagold's Third-Party Subpoenas should be quashed because they would force disclosure of unpublished editorial communications and information about JCap's newsgathering process with a confidential third party, the Movant. Such communications—even their existence—are absolutely privileged under New York Civil Rights Law § 79-h, New York's Reporters' Privilege. The Subpoenas are plainly precluded by multiple rulings from the New York court finding that communications with third-parties, including most notably the Movant, regarding the Report are absolutely privileged. Despite numerous rulings over multiple years reinforcing that finding, Plaintiff again seeks to evade New York's absolute protections for confidential news sources. The Court observed, prior to Novagold's second attempt, "I'm not sure they [JCap] even need to say that…Because even if there were such communication, I don't know that they need to tell you that they exist." Ex. A, ¶ 32. More recently, when the Court asked if Novagold wanted to revisit third-party source "confidentiality," Novagold's counsel said that they would not, and acknowledged that § 79-h "*shielded the identity of confidential sources of news*. And *we're not seeking that*." *Id*., ¶¶ 60, 43.

While the Court barred disclosure of communications with third-parties (including the Movant) regarding the Report, the Court did permit Novagold to obtain information from JCap about the "financial arrangements" between JCap and Movant, which JCap disclosed as directed.

Ex. A ¶¶ 50-56. JCap still opposes revelation of the *identity* of the Movant to honor its contractual obligations to the Movant. No further discovery is called for.

## STATEMENT OF FACTS

### I. Novagold's Past Unsuccessful Attempts at Obtaining Communications between Movant and JCap.

JCap is a financial research firm that independently researches and publishes articles to inform the public on publicly traded companies that it considers over- or under-valued. Ex. A ¶ 4. On May 28, 2020, JCap published a report on Novagold entitled "*Pipe Dream: The deposit that will never be mined*" (the "Report"). The Report cited, footnoted, hyperlinked and quoted public and confidential sources to support its thesis that Novagold's planned Donlin Mine would never be built due to Alaska's difficult terrain. *Id*. ¶ 12. JCap also opined that Novagold's cost projections in its 2012 Feasibility Study were wishful, overly optimistic and misleading. *Id.* JCap therefore concluded that Novagold was over-valued by the market. *Id*. ¶ 11. On June 29, 2020, Novagold sued JCap in the Eastern District of New York, alleging the Report defamatory. Ex. G.

JCap was founded by veteran professional journalist Anne Stevenson-Yang, an alum of the Columbia School of Journalism with experience reporting for Gannett, Business Week, and the Chinese Business Review, among others. Ex A ¶ 5-6. Ms. Stevenson-Yang co-founded JCap with Tim Murray, a former financial reporter with a specialty in mining companies for over a decade who acted as JCap's Managing Director. *Id*. ¶ 7.

A trip to Alaska piqued Ms. Stevenson-Yang's interest in the state's rugged terrain and gold mining industry. *Id*. ¶¶ 9-11. She and Mr. Murray researched various companies, including Novagold and its planned Donlin Mine in the Fairbanks region of Alaska. *Id*. After studying Novagold's SEC filings, 2012 Feasibility Study and other publicly available documents, they concluded that the market was overvaluing Novagold based on its overly optimistic Donlin Mine

2

feasibility study. ¶ 11. Accordingly, Ms. Stevenson-Yang and Mr. Murray determined that Novagold was a fair and proper subject of a short report. *Id.* No third-party prompted or directed them to research Novagold, including the Movant. *Id*. ¶¶ 9-11.

To support its small reporting outlet, JCap at times acted on its research in the form of a short position. *Id*. ¶¶ 15-16. At other times, JCap made its research available to a fund manager who could commit a larger sum to a trading position based on JCap's research, if the manager found JCap's research credible. ¶ 17. Either way, JCap's reports always disclosed that it "may benefit from short positions" and "therefore stands to realize significant gains" if the researched company's stock declines. *Id*. ¶ 17; Ex. B.

Movant was a fund manager to whom JCap made a draft of its Report available before publication, which Movant reviewed and found credible. *Id*. ¶ 18. Under the parties' agreement, JCap had "sole discretion to publish" the Report; and JCap had no right to control how or even whether Movant traded on the Report. *Id*. ¶ 18.

During discovery, JCap invoked New York's Reporters Privilege, Civil Rights Law § 79-h, objecting to demands from Novagold seeking confidential and non-confidential news, communications, editorial materials and confidential source identity. *Id*. ¶ 21, Ex. F. Novagold moved to compel:

> **RFP No. 7**: Documents reflecting communications or meetings between JCAP and third parties regarding NOVAGOLD, and
>
> **RFP No. 15**: Documents and information reflecting editorial input, oversight, or suggested edits or comment of or concerning the Report by any person.

Ex. A ¶¶ 22-23.

Mag. Judge Peggy Kuo ruled that the Report was "news" under the statute (which defines "news" broadly), and therefore these document requests were covered by New York's Reporters

3

Privilege. *Id*. ¶¶ 25-28, Ex G. She recognized that § 79-h provides an absolute protection for confidential sources of information and a qualified privilege for non-confidential sources of information. Ex. A ¶ 25. She denied Novagold's motion with leave to attempt to overcome the privilege for non-confidential sources. *Id*. ¶¶ 29-30. Novagold never tried to do so. *Id*.

Now, Novagold makes the same demand for the same communications that Judge Kuo has already ruled to be privileged:

> **RFP No. 1**: Any and all communications with J Capital, Anne Stevenson Yang, or Timothy Murray concerning Novagold during the Relevant Time Period.

This request plainly maps into the New York Reporters Privilege's absolute protection for confidential sources of information gained in the course of gathering news. JCap therefore moves to quash Novagold's requests for its communications about Novagold and the substance of the Report from the Movant, a confidential source. From the very first, Novagold's requests have been expressly aimed at a party in the position of Movant. *Id*. ¶ 31; Ex. C. Judge Kuo has repeatedly denied those requests as protected by the Reporters Privilege. Ex. A ¶ 27, 31.

## ARGUMENT

### I. The Subpoenas Must Be Quashed Because, as the New York Court Already Found, Records of a Confidential Source of News Are Absolutely Privileged.

The documents sought by the Subpoenas are privileged and absolutely protected from compelled disclosure by New York's Shield Law, § 79-h. The Shield Law protects against the:

> disclos[ure of] *any news* obtained or *received in confidence* or the identity of the source of any such news coming into such [reporter's] possession *in the course of gathering or obtaining news*.[1] § 79-h(b) (emphasis added).

It defines "news" broadly as any "written, oral, pictorial, photographic, or electronically recorded

---

[1] The law provides a qualified privilege for non-confidential sources which can be overcome by showing that the sought information is (1) highly material and relevant, (2) critical or necessary

4

information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare." § 79-h(a)(8).

First, the privilege applies. Judge Kuo already determined that the Report was "news" and therefore, JCap could invoke the Reporters Privilege. Ex. A ¶ 25; Ex. C. She recognized that New York's privilege for confidential sources of information is absolute. "Defendant [JCap] is engaged in news and so can assert the reporter's privilege… there are things [sought] that are confidential sources and that's absolute." *See* Ex. C, at 55: 2-10. Judge Kuo has consistently recognized that New York's privilege for confidential sources of news is absolute. *See* Ex. H, at 15:22-25 ("I ruled on that many years ago. I found that the report is news and I made the analysis if there was [a] confidentiality promise, then there's nothing you can do about it."); Ex. I, at 6: 19-21 ("when the reporter's privilege applies … if it's confidential, you're out of luck.").

Second, JCap promised Movant unambiguous confidentiality. Not only is it a term of the parties' agreement, Ex. A ¶ 17, but JCap invoked the privilege early and consistently when responding to Novagold's discovery demands. *See e.g.* Ex. A ¶ 21; Ex. M.

Judge Kuo gave Novagold a chance to challenge whether confidentiality had truly been promised to JCaps' sources. *See* Ex. H, at 20: 13-15 ("[if] there's a different circumstance, you know, [sources] weren't promised confidentiality, now [Novagold] would bring that up."). Novagold declined that opportunity: "we're not seeking to revisit that." Ex. I, at 7: 4-5; *see also* Ex. A ¶ 60. It is therefore uncontested that Movant is a confidential party.

Therefore, Novagold's Request for Production 1 maps directly into what Judge Kuo has already ruled absolutely privileged under § 79-h. Novagold's request for "any and all

---

to the maintenance of its claim, and (3) not obtainable from any alternative source. N.Y. Civ. Rights L. § 79-h(c). That provision is not at issue because Movant is a confidential source.

5

communications" between Movant, an anonymous source of information, and JCap, which JCap received in the course of gathering news—writing and research a report about Novagold. That is "news" from a confidential source under § 79-h. It is written "information or communications" concerning the subject of JCap's report "obtained in confidence." *See* § 79-h(a)(8). It maps directly into the protections of New York's strong Reporter's Privilege, one "that has been recognized as the strongest in the nation." *Holmes v. Winter*, 22 N.Y.3d 300, 310 (2013) ("[S]afeguarding the anonymity of those who provide information in confidence is perhaps the core principle of New York's journalistic privilege, as is evident from our colonial tradition, the constitutional text and the legislative history of the Shield Law.")

> II.     **The Subpoenas Must Be Quashed Because Plaintiff is Precluded by Judge Kuo's Rulings and By Plaintiff's Own Representations to the New York Court.**

Judge Kuo applied § 79-h faithfully when she denied Novagold's Motion to Compel responses to parallel demands asking JCap to produce "documents and information reflecting editorial input, oversight, or suggested edits or comment of or concerning the Report ***by any person***." Ex. A ¶ 23. Judge Kuo recognized that the target of those demands was "editorial" and "completely covered by reporters' privilege." *Id.* ¶ 26. She ruled that "Documents reflecting communications or meetings ***between JCAP and third parties*** regarding NOVAGOLD," are "covered by the reporter's privilege. There's nothing there that needs to be detailed." *Id.* ¶ 27-28.

Novagold did not appeal that adverse ruling nor renew its motion as to its "communications" request. Novagold only renewed its discovery demands for items seeking ***the identity*** of a "persons who paid JCAP any money, consideration, or other inducement to prepare, revise or publish the Report." *Id.* ¶ 34; ECF 74.

Novagold expressly acknowledged that § 79-h "***shielded the identity of confidential sources of news***. And ***we're not seeking that***. We're seeking the identity of financial

6

arrangements, client information, funder information." *Id*. ¶ 43; Ex. D (emphasis added). Based on that representation, Judge Kuo permitted Novagold to have Movant's identity and held that the Reporter's Privilege did not shield "from disclosure ***the identity of any purported funder*** of JCAP's Report." Ex. A ¶ 45 (emphasis added). Movant appealed that ruling to the Court of Appeals, where it remains pending.

Despite representing to the Court that it was only looking for "any financial arrangement relating to the report,"[2] and despite having received that information from JCap, Novagold now asks for "any and all communications" between Movant and JCap. This ignores and circumvents Judge Kuo's repeated rulings that "documents and information reflecting editorial input, oversight, or suggested edits or comment of or concerning the Report ***by any person***," is "editorial" and "completely covered by reporters' privilege," and that "Documents reflecting communications or meetings ***between JCAP and third parties*** regarding NOVAGOLD" is "covered by the reporter's privilege." Ex. A, ¶¶ 26-27. Those protections are absolute according to § 79-h and the Court. *Id*.

The agreement affirmed each party's independence: Movant could, in its sole discretion, "opt not to trade or invest upon JCAP's research," and JCap had "sole discretion to publish a report on its website or in another public forum on a Researched Company." Ex. A, ¶ 18.

If JCap and Movant did have any discussions about the Report, any document evidencing this is "editorial" and "completely covered by the reporters privilege." Ex. A, ¶¶ 26-27. As Judge Kuo decided, "there is nothing more that needs to be detailed." Ex. C, at 57:1-6. Judge Kuo understood exactly what Novagold was asking for back in 2021. She denied Novagold

---

[2] Movant was not a "funder." JCap covered its own costs and had complete editorial independence. Ex. A, ¶¶ 15, 18.

counsel's request for a hypothetical document evidencing *exactly what Novagold is asking for now* –communications between JCap and a third-party source with a financial association to the Report. Ex. A ¶¶ 31-32. When Novagold counsel speculated, "if J Cap is able to say there are no internal communications relating to funding with third party-sources who were dictating what we would and wouldn't do, you know, we can talk about whether that's something that would resolve our issue." Ex. C, at 58: 18-22. Judge Kuo re-enforced her ruling on the privilege to that request with the following observation: "I'm not sure they [JCap] even need to say that…Because even if there were such communication, I don't know that they need to tell you that they exist." *Id.*, at 58: 24-25; 59: 2-4. Novagold is bound by the decisions of the Court in New York.

### III.     Movant's Records Detailing Reporters' Work Are Protected by the Same Privilege Afforded to Reporter's Records.

Novagold cannot evade JCap's Reporter's Privilege by serving the Subpoenas on Movant. As the Second Circuit has recognized, if another party is subpoenaed for records that play an "integral role in [a] reporters' work," First Amendment rights are "implicated," and those records are "covered by the same privileges afforded to the reporters themselves and their personal records." *New York Times Co. v. Gonzales*, 459 F.3d 160, 168 (2d Cir. 2006) (relying on *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of New York Harbor*, 667 F.2d 267, 271 (2d Cir. 1981) (quashing subpoena from defendant seeking records evidencing plaintiff's payroll deductions because "First Amendment rights are implicated whenever government seeks from third parties records of actions that play an integral part in facilitating an association's normal arrangements for obtaining members or contributions."). Courts have repeatedly acknowledged this same principal by allowing third-party internet service providers to invoke the First Amendment rights of an anonymous internet user in resisting a subpoena for the

8

anonymous user's records. *See generally Sony Music Ent. Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 563 (S.D.N.Y. 2004) (listing cases where "Courts have addressed, on a number of recent occasions, motions to quash subpoenas seeking identifying subscriber information from ISPs").

In *Gonzales*, the *New York Times* had refused to voluntarily provide the government phone records of communications between its reporters and organizations the government suspected of funding terrorism. *Gonzales*, 459 F.3d at 167. The government threatened to obtain the records from third party phone services using a grand jury subpoena, arguing that "whatever privileges the reporters may themselves have, they cannot defeat a subpoena of third party telephone records." *Id*. The *Times* argued that those records were no less shielded by the reporters' privilege protecting the identity of confidential sources. *Id.* The Court agreed, holding that "whatever rights a newspaper or reporter has to refuse disclosure in response to a subpoena extends to the newspaper's or reporter's telephone records in the possession of a third party provider." *Id.* at 163. Because the third-party phone company held records that "played an integral role in the collection of information by reporters," the "First Amendment protection that protects the reporters also protected their third party telephone records sought by the government." *Id*.[3]

Novagold cannot serve Subpoenas on another party to obtain JCap's records. Like in *Gonzales*, Novagold's Subpoenas asking for communications exchanged during newsgathering

---

[3] In *Gonzales*, the records were sought as part of a federal grand jury investigation, therefore the court applied the common law qualified privilege derived from FRE 501 and determined it had been overcome. Here, § 79-h privilege applies as this is a state claim of defamation, for which state privileges apply. *See* FRE 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Unlike the common law qualified privilege, § 79-h is an absolute privileged derived from New York state civil rights law.

implicate JCap's First Amendment rights and its reporters privilege protections. *See id.*

The Subpoenas issued to Movant are an even more severe breach of the privilege than those threatened in *Gonzales*, because Novagold served them *on the confidential source itself.* It goes without saying that any of Movant's records showing "any and all communications" with JCap about the Report "play[] an 'integral role' in reporters' work." *See id.* at 168. These are <u>the very records themselves</u> between journalist and confidential source of information. Movant's records of communications with JCap "play an integral part in facilitating" newsgathering— those that might comment on or discuss a thesis or exchange drafts, supporting materials or documentation. *Id*. Second, and unlike *Gonzales*, JCap's privilege is *absolute* under § 79-h, not a common law or qualified privilege. *See supra* fn 3.

Furthermore, Novagold is trying to evade <u>both</u> JCap and Movant's constitutional rights by seeking "any and all communications" regarding the Report after telling Judge Kuo that it was "not seeking" individuals' communications or information regarding the Report. *See* Ex. A, ¶ 43. Just as Novagold could not ask a hypothetical phone provider for JCap and Movant's absolutely privileged confidential communications, it cannot ask Movant directly for these same protected records. That is because, as the Second Circuit recognized, J Cap's and Movant's First Amendment rights are implicated by the Subpoenas. *See Gonzales*, 459 F.3d at 168. This is true no matter who is asked: JCap, Movant, or a third-party communications provider. Sec. 79-h provides such communications are *absolutely protected*.

## **CONCLUSION**

For the foregoing reasons, JCap respectfully requests that this Court quash the Subpoenas and grant it such other and further relief as the Court deems just and proper.

Dated: June 6, 2025

Respectfully submitted,

Miller Korzenik Sommers Rayman LLP

*/s/ David S. Korzenik*

David S. Korzenik
1501 Broadway, Suite 2015
New York, New York 10036
212-752-9200
Dkorzenik@mkslex.com

*Attorney for Defendant*
*J Capital Research USA LLC*

11

## CERTIFICATE OF SERVICE

I certify that on June 6, 2025, a true and correct copy of the foregoing document was served via email service on the following:

| | |
|---|---|
| Brendan Francis Quigley<br>Baker Botts L.L.P.<br>30 Rockefeller Plaza<br>New York, NY 10112<br>212-408-2520<br>212-259-2520 (fax)<br>brendan.quigley@bakerbotts.com | Adam Rich<br>Davis Wright Tremaine LLP<br>1251 Avenue of the Americas<br>21st Floor<br>New York, NY 10020-1104<br>212-402-4065<br>adamrich@dwt.com |
| Eric R. DuPont<br>Baker Botts L.L.P.<br>30 Rockefeller Plaza<br>New York, NY 10112<br>212-408-2553<br>212-259-2553 (fax)<br>eric.dupont@bakerbotts.com | Robert Balin<br>Davis Wright Tremaine LLP<br>1251 Avenue of the Americas<br>21st Floor<br>New York, NY 10020-1104<br>212-603-6440<br>robertbalin@dwt.com |
| Seth T. Taube<br>Baker Botts, LLP<br>30 Rockefeller Plaza<br>44th Floor<br>New York, NY 10112<br>212-408-2500<br>212-259-2655 (fax)<br>seth.taube@bakerbotts.com | Peter D. Kennedy<br>Graves Dougherty Hearon & Moody<br>401 Congress Avenue<br>Suite 2700<br>Austin, Texas 78701<br>512-480-5764<br>PKennedy@gdhm.com |
| *Counsel for Respondent Novagold Resources Inc.* | *Counsel for Nonparty Movant Anonymous Third Party* |

*/s/ David S. Korzenik*
David S. Korzenik